## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF COAST HEALTH CARE, LLC, *et al.*,[1] | ) | Case No. 21-11336 (KBO) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## DEBTORS' JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        dmsimon@mwe.com
              ekeil@mwe.com

David R. Hurst (I.D. No. 3743)
**MCDERMOTT WILL & EMERY LLP**
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone:    (302) 485-3900
Facsimile:    (302) 351-8711
Email:        dhurst@mwe.com

*Proposed Counsel for Debtors and
Debtors-in-Possession*

Dated:    Wilmington, Delaware
          October 28, 2021

THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT, AND REMAINS SUBJECT TO MATERIAL REVIEW AND REVISION IN ALL RESPECTS.

---

[1] The last four digits of Gulf Coast Health Care, LLC's federal tax identification number are 9281. There are 62 Debtors in these chapter 11 cases, which cases are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/GulfCoastHealthCare. The location of Gulf Coast Health Care, LLC's corporate headquarters and the Debtors' service address is 40 South Palafox Place, Suite 400, Pensacola, FL 32502.

## <u>TABLE OF CONTENTS</u>

Article I. Definitions and Rules of Interpretation ................................................................................ 1
    A.      Rules of Construction ......................................................................................... 1
    B.      Definitions ......................................................................................................... 1
    C.      Rules of Interpretation ..................................................................................... 18
    D.      Computation of Time........................................................................................ 18
    E.      Governing Law ................................................................................................. 18
    F.      Consent Rights ................................................................................................. 18
Article II. Unclassified Claims.......................................................................................................... 18
    A.      DIP Facility Claim ........................................................................................... 18
    B.      Administrative Claims ..................................................................................... 19
    C.      Priority Tax Claims .......................................................................................... 19
Article III. Treatment of Claims and Interests ................................................................................. 19
    A.      Introduction ...................................................................................................... 19
    B.      Summary........................................................................................................... 20
    C.      Classification and Treatment of Claims and Interests ..................................... 20
            1.      Class 1: New Ark Secured Claim ......................................................20
            2.      Class 2: Other Secured Claims ..........................................................20
            3.      Class 3: Other Priority Claims ..........................................................21
            4.      Class 4: Omega Unsecured Claim ......................................................21
            5.      Class 5: Subordinated Seller Note Claims.........................................21
            6.      Class 6: Service Provider Claims.......................................................22
            7.      Class 7: General Unsecured Claims....................................................22
            8.      Class 8: Intercompany Claims ...........................................................22
            9.      Class 9: Existing Equity Interests .....................................................23
    D.      Special Provision Regarding Unimpaired Claims ............................................23
    E.      Allowed Claims ............................................................................................... 23
    F.      Special Provisions Regarding Insured Claims ................................................. 24
Article IV. Acceptance or Rejection of the Plan.............................................................................. 24
    A.      Acceptance by an Impaired Class ..................................................................... 24
    B.      Presumed Acceptances by Unimpaired Classes............................................... 24
    C.      Class Deemed to Reject Plan ............................................................................ 25
    D.      Impaired Classes of Claims Entitled to Vote................................................... 25
    E.      Class Presumed to Accept or Deemed to Reject.............................................. 25
    F.      Vacant Classes ................................................................................................. 25
    G.      Confirmation Pursuant to Bankruptcy Code Section 1129(b) .........................25
    H.      Existing Equity Interests .................................................................................. 25
Article V. Means for Implementation of the Plan............................................................................ 26
    A.      Substantive Consolidation ................................................................................ 26
            1.      Consolidation of the Chapter 11 Estates............................................26
            2.      Substantive Consolidation Order........................................................26
    B.      Corporate Action............................................................................................... 26
            1.      Distribution of New Membership Interests........................................26
             2.      Continued Corporate Existence ..........................................................27
            3.      Dissolution .........................................................................................27
            4.      Cancellation of Old Securities and Agreements ................................27
             5.      No Further Action ..............................................................................28
    C.      Books and Records; Privilege Matters.............................................................. 28
            1.      Access to Debtors' Books and Records..............................................28
            2.      Transfer of Privilege ..........................................................................28

i

D.      Dissolution of the Committee ................................................................29
E.      Liquidating Trust ...................................................................................29
F.      GUC Trust...............................................................................................30
  1.      Establishment and Administration of the GUC Trust....................30
  2.      Assets of the GUC Trust...............................................................30
  3.      GUC Trust Interests ......................................................................30
  4.      Appointment of a GUC Trustee ...................................................31
  5.      Creation of GUC Trust Committee and Procedures Related
  Thereto .....................................................................................................31
  6.      Standing of the GUC Trust ...........................................................31
  7.      Function and Duration of the GUC Trust Committee ....................31
  8.      Recusal of GUC Trust Committee Members..................................31
G.      Sources of Consideration for Plan Distributions....................................31
H.      Revesting of Assets in Liquidating Debtors ...........................................32
I.       Exemption from Certain Transfer Taxes ................................................32
J.      Applicability of Bankruptcy Code Sections 1145 and 1125(e) ...............32
K.      Preservation of Causes of Action............................................................33
Article VI. Provisions Governing Distributions ........................................................33
A.      Distributions on Allowed Claims............................................................33
B.      Disbursing Agent ....................................................................................33
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions .....................34
  1.      Delivery of Distributions in General.............................................34
  2.      Undeliverable and Unclaimed Distributions..................................34
D.      Means of Cash Payment .........................................................................35
E.      Interest on Claims ...................................................................................35
F.      Withholding and Reporting Requirements ..............................................35
G.      Setoffs .....................................................................................................36
H.      Procedure for Treating and Resolving Disputed, Contingent, and/or
Unliquidated Claims .........................................................................................36
  1.      Objection Deadline; Prosecution of Objection ..............................36
  2.      No Distributions Pending Allowance ............................................37
  3.      Disputed Claims Reserve ..............................................................37
  4.      Distributions After Allowance.......................................................37
  5.      De Minimis Distributions ..............................................................38
  6.      Fractional Dollars ..........................................................................38
  7.      Allocation of Plan Distributions Between Principal and Interest ........38
  8.      Distribution Record Date ...............................................................38
Article VII. Treatment of Executory Contracts and Unexpired Leases ......................38
A.      Rejected Contracts and Leases ...............................................................38
B.      Rejection Damages Bar Date ..................................................................39
C.      Indemnification Obligations ...................................................................39
Article VIII. Conditions Precedent to Confirmation and  Consummation of the Plan .........39
A.      Conditions to Confirmation ...................................................................39
B.      Conditions to Effective Date ..................................................................40
C.      Waiver of Conditions..............................................................................40
D.      Consequences of Non-Occurrence of Effective Date .............................41
Article IX. Allowance and Payment of Certain Administrative Claims ......................41
A.      Professional Fee Claims.........................................................................41
  1.      Final Fee Applications ...................................................................41
  2.      Employment of Professionals after the Effective Date..................41
B.      Substantial Contribution Compensation and Expenses Bar Date ............42

C.     Other Administrative Claims ........................................................................ 42
Article X. Effects of Confirmation ........................................................................... 42
    A.     Compromise and Settlement of Claims and Controversies............................. 42
    B.     Binding Effect................................................................................................ 42
    C.     Discharge of the Debtors ............................................................................... 43
    D.     Releases ........................................................................................................ 43
        1.     Releases by the Debtors...................................................................... 43
        2.     Mutual Releases by Released Parties.................................................. 43
        3.     Releases by Third-Party Releasing Parties ........................................ 44
    E.     Exculpation and Limitation of Liability ........................................................ 45
    F.     Injunction...................................................................................................... 45
    G.     Compromises and Settlements....................................................................... 46
    H.     Satisfaction of Subordination Rights ............................................................. 47
Article XI. Retention of Jurisdiction........................................................................ 47
    A.     Retention of Jurisdiction by the Court........................................................... 47
    B.     Retention of Non-Exclusive Jurisdiction by the Court ................................... 49
    C.     Failure of Court to Exercise Jurisdiction ...................................................... 49
Article XII. Miscellaneous Provisions...................................................................... 49
    A.     Modifications and Amendments .................................................................... 49
    B.     Severability of Plan Provisions..................................................................... 49
    C.     Successors and Assigns ................................................................................. 50
    D.     Payment of Statutory Fees ............................................................................ 50
    E.     Revocation, Withdrawal, or Non-Consummation.......................................... 50
    F.     Service of Documents.................................................................................... 51
    G.     Plan Supplement(s)....................................................................................... 52

## **TABLE OF EXHIBITS**

**INTRODUCTION**[2]

Gulf Coast Health Care, LLC and the 61 of its affiliates that are debtors and debtors-in-possession in the above-captioned Chapter 11 Cases propose the following plan of liquidation. The Plan contemplates the liquidation of the Debtors and the resolution of outstanding Claims against and Interests in the Debtors pursuant to Bankruptcy Code section 1121(a). The Debtors are the proponents of the Plan within the meaning Bankruptcy Code section 1129.

For a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, a summary of the Plan, and certain other related matters, reference is made to the Disclosure Statement that is being distributed herewith. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

All Holders of Claims that are eligible to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article XII.A, the Debtors reserve the right to alter, amend, modify (one or more times), revoke, or withdraw the Plan prior to its substantial consummation.

## ARTICLE I.
## DEFINITIONS AND RULES OF INTERPRETATION

**A.     Rules of Construction**

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.     Definitions**

**1.1     "503(b)(9) Claim"** means a Claim arising under Bankruptcy Code section 503(b)(9) against the Debtors.

**1.2     "A/R Working Capital Line"** means the revolving credit facility of up to $15 million provided through the Credit Agreement.

**1.3     "Administrative Claim"** means a Claim (other than a DIP Facility Claim) for payment of an administrative expense of a kind specified in Bankruptcy Code sections 503(b) or 1111(e)(2) and entitled to priority in payment under Bankruptcy Code sections 507(a)(2) or 507(b), including (a) the actual and necessary costs and expenses incurred after the Petition Date

---

[2]     Capitalized terms used in this Introduction shall have the meanings ascribed to such terms in Article I hereof.

of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises) and Claims by Governmental Units for taxes accruing after the Petition Date (but excluding Claims related to taxes accruing on or before the Petition Date); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930; (d) obligations designated as Administrative Claims pursuant to an order of the Court; and (e) 503(b)(9) Claims.

**1.4** **"Administrative Claims Bar Date"** means the deadline for Filing Proofs of Claim for payment of Administrative Claims, which shall be the earlier of (a) the bar date established for any Administrative Claims by separate order of the Court; and (b) 30 days after the Effective Date, unless otherwise ordered by the Court.

**1.5** **"Administrative Claims Objection Deadline"** means the deadline for Filing objections to requests for payment of Administrative Claims Filed on or before the Administrative Claims Bar Date, which deadline shall be 180 days after the Effective Date, unless otherwise ordered by the Court.

**1.6** **"Affiliate"** has the meaning ascribed to such term in Bankruptcy Code section 101(2).

**1.7** **"Affiliate Debtor"** means all of the Debtors, except Gulf Coast.

**1.8** **"Allowed"** means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Interest in the specified Class or of a specified type.

**1.9** **"Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Court; (b) that has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero in the Schedules, and the Schedules have not been amended with respect to such Claim on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court; (c) that is the subject of a timely Filed Proof of Claim and either (i) no objection to its allowance has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed in a liquidated amount (x) in the Plan or (y) after the Effective Date, by the Liquidating Trustee or GUC Trustee, as applicable, in writing; *provided*, *however*, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Court (if such written request is required) in each case as to which (a) the Debtors or the Liquidating Trustee, as applicable, or any other party-in-interest (x) has not Filed an objection on or before the Administrative Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (y) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (b) after the Effective Date, the Liquidating Trustee has expressly allowed in a liquidated amount in writing.  For purposes of computing Distributions under the Plan, a Claim that has been deemed "Allowed" shall not include interest, fees, costs, or charges on such Claim from and after the Petition Date, except as provided in Bankruptcy Code section 506(b) or as otherwise expressly set forth in the Plan.

**1.10**   **"Assignment Agreement"** means that certain Loan, Commitment and Agency Assignment Agreement among New Ark and Wells Fargo, dated November 2, 2020, through which Wells Fargo assigned its interests and obligations under the Credit Agreement to New Ark.

**1.11**   **"Avoidance Actions"** means any and all claims and causes of action of the Debtors arising under chapter 5 of the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549, and 550 thereof, or their state law analogs.

**1.12**   **"Ballot"** means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote under Article IV.D hereof in connection with the solicitation of acceptances of the Plan.

**1.13**   **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.14**   **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, and the Local Rules, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.15**   **"Blue Mountain"** means Eagle Arc Partners LLC (f/k/a Blue Mountain Holdings).

**1.16**   **"Blue Mountain Facilities"** means, collectively, the Blue Mountain Non-HUD Facilities and the Blue Mountain HUD Facilities.

**1.17**   **"Blue Mountain HUD Facilities"** means Singing River Health and Rehabilitation Center and Lakeside Health and Rehabilitation Center.

**1.18**   **"Blue Mountain HUD Landlords"** means those parties identified as "Landlords" in the Blue Mountain HUD Master Lease.

**1.19**   **"Blue Mountain HUD Master Lease"** means that certain Master Lease (as may be amended, modified, renewed, or restated from time to time) dated as of April 6, 2021 by and among Gulf Coast Master Tenant II, LLC and the Blue Mountain HUD Landlords.

**1.20**   **"Blue Mountain Landlords"** means, collectively, the Blue Mountain Non-HUD Landlords and the Blue Mountain HUD Landlords.

**1.21**   **"Blue Mountain Leased Property"** means all of any portion or portions of the property subject to the Blue Mountain Non-HUD Master Lease or Blue Mountain HUD Master Lease.

**1.22**   **"Blue Mountain MOTA Order"** means an order or, collectively, orders, in form and substance satisfactory to the DIP Agent, of the Court approving, among other things, the Debtors' entry into the Blue Mountain MOTA(s).

**1.23**   **"Blue Mountain MOTA(s)"** means one or more management and operations transfer agreements satisfactory to the Debtors and one or more New Blue Mountain Operator(s) and

reasonably acceptable to New Ark, and customary for similar transactions, and under which New Blue Mountain Operator(s) shall be responsible for funding all operating costs of and shall be entitled to all payments generated by the Blue Mountain Leased Property on and after the date the New Blue Mountain Operator(s) assume responsibility for operating the Blue Mountain Leased Property.

**1.24** **"Blue Mountain Non-HUD Facilities"** means Shelby Health and Rehabilitation Center and Cobblestone Rehabilitation and Healthcare Center.

**1.25** **"Blue Mountain Non-HUD Landlords"** means those parties identified as "Landlords" in the Blue Mountain Non-HUD Master Lease.

**1.26** **"Blue Mountain Non-HUD Master Lease"** means that certain Master Lease dated as of November 2, 2020 (as may be amended, modified, renewed, or restated from time to time) by and among Gulf Coast Master Tenant III, LLC and the Blue Mountain Non-HUD Landlords.

**1.27** **"Blue Mountain Portfolio"** means the real estate, operations, and related assets of the Blue Mountain Facilities.

**1.28** **"Books and Records"** means any and all books and records of any of the Debtors, including any and all documents and any and all computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.

**1.29** **"Borrowers"** has the meaning ascribed to such term in the DIP Term Sheet.

**1.30** **"Business Day"** means any day, other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.31** **"Cash"** means legal tender of the United States of America or equivalents thereof.

**1.32** **"Cash Collateral"** has the meaning ascribed to it under Bankruptcy Code section 363(a).

**1.33** **"Causes of Action"** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to Bankruptcy Code sections 362, 510, 542, 543, 544 through 550, or 553; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Bankruptcy Code section 558.

**1.34** **"Chapter 11 Cases"** means the chapter 11 cases commenced by the Debtors and jointly administered under case number 21-11336 (KBO) in the Court.

4

**1.35** **"Claim"** means a claim against any Debtor, whether or not asserted, as such term is defined in Bankruptcy Code section 101(5).

**1.36** **"Claims Agent"** means Epiq Corporate Restructuring, LLC or any successor thereto.

**1.37** **"Claims Objection Deadline"** means the last day for filing objections to Claims (other than Disallowed Claims for which no objection or request for estimation is required or Administrative Claims for which the deadline is the Administrative Claims Objection Deadline), which day shall be 180 days after the Effective Date, or such other date as may be ordered by the Court.

**1.38** **"Class"** means each category or group of Holders of Claims or Interests that has been designated as a class in Article III of the Plan.

**1.39** **"Collateral"** means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.40** **"Committee"** means any statutory committee appointed in the Chapter 11 Cases.

**1.41** **"Confirmation"** means the entry of the Confirmation Order, subject to all conditions specified in Article VIII.A having been satisfied or waived pursuant to Article VIII.C.

**1.42** **"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**1.43** **"Confirmation Hearing"** means the hearing(s) before the Court to consider Confirmation of the Plan and related matters pursuant to Bankruptcy Code section 1128, as such hearing(s) may be adjourned or continued from time to time.

**1.44** **"Confirmation Order"** means the order entered by the Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.45** **"Consummation"** means the occurrence of the Effective Date.

**1.46** **"Contingent"** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.47** **"Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

**1.48** **"Credit Agreement"** means that certain Credit Agreement, effective July 6, 2018 (as amended, modified, renewed, or restated from time to time, including by the Assignment Agreement) among Gulf Coast, certain of its subsidiaries, and Wells Fargo.

**1.49** **"Creditor"** means any Person or Entity that holds a Claim against one or more of the Debtors.

**1.50** **"Debtors"** means, together, Gulf Coast and the Affiliate Debtors.

**1.51** **"Definitive Documents"** means, collectively, (a) all first-day pleadings; (b) the Plan; (c) the Confirmation Order and any motion or other pleading related to the Plan or to Confirmation of the Plan; (d) the Disclosure Statement; (e) the motion seeking approval of the Disclosure Statement and the related solicitation materials; (f) the Solicitation Procedures Order; (g) the DIP Orders; (h) the DIP Credit Agreement; (i) the Omega MOTA, the Omega MOTA Order, and any motion or other pleadings related to seeking entry of the Omega MOTA Order; (j) the Debtors' organizational documents as modified to satisfy the requirements of the Bankruptcy Code; and (k) any documents included in the Plan Supplement.

**1.52** **"Delta Group"** means, collectively, Delta Health Group, LLC, Cordova Rehab, LLC, and Pensacola Health Trust, LLC.

**1.53** **"DIP Agent"** means OHI Asset Funding (DE), LLC, as administrative agent and collateral agent of the DIP Facility.

**1.54** **"DIP Budget"** means the budget depicting on a 13-week basis cash revenue, receipts, expenses, and disbursements in connection with the DIP Facility, which must be approved in accordance with the terms of the DIP Term Sheet.

**1.55** **"DIP Credit Agreement"** means that certain debtor-in-possession credit agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms), by and among Borrowers, each of the guarantors named therein, and the lenders from time to time party thereto, consistent in all respects with the terms set forth in DIP Term Sheet and otherwise reasonably acceptable to the Debtors and the DIP Lender.

**1.56** **"DIP Facility"** means the $25 million debtor-in-possession credit facility provided to the Borrowers by the DIP Lender on the terms of, and subject to the conditions set forth in, the DIP Credit Agreement and DIP Term Sheet.

**1.57** **"DIP Facility Claim"** means the Allowed Claim by the DIP Lender arising under or as a result of the DIP Term Sheet, DIP Credit Agreement, and/or Final DIP Order.

**1.58** **"DIP Lender(s)"** has the meaning set forth in the DIP Term Sheet and, after the DIP Credit Agreement has been consummated, the DIP Credit Agreement.

**1.59** **"DIP Orders"** means the Interim DIP Order and Final DIP Order.

**1.60** **"DIP Term Sheet"** means that certain term sheet labeled "Gulf Coast Health Care, LLC and Certain Affiliates and Subsidiaries Thereof Summary of Terms and Conditions up to $25 Million Secured Debtor-in-Possession Credit Facility", dated as of October 14, 2021, and originally filed at Docket No. 16-1, as amended, modified, restated, or supplemented.

**1.61** **"Disallowed"** means, when used in reference to a Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order; (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been Filed by the applicable bar date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law; (c) is not Scheduled, and as to which (i) no Proof of Claim has been Filed by the applicable bar date or under applicable law; and (ii) no request for payment of an Administrative Claim has been Filed by the Administrative Claims Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (d) after the Effective Date, has been disallowed in a written agreement by and between the Liquidating Trustee or the GUC Trustee, as applicable, and the Holder of such Claim.

**1.62** **"Disbursing Agent"** means (a) on or prior to the Effective Date, the Debtors, and (b) after the Effective Date, (i) the GUC Trustee, with respect to Distributions on General Unsecured Claims, and (ii) the Liquidating Trustee, with respect to all other Distributions made under the Plan; *provided*, *however*, that the Debtors, the Liquidating Trustee, or the GUC Trustee may, in their discretion, retain a third party to act as Disbursing Agent.

**1.63** **"Disclosure Statement"** means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised, or modified from time to time, as approved by the Court pursuant to the Solicitation Procedures Order.

**1.64** **"Disputed"** means, when used in reference to a Claim, a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

**1.65** **"Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to a Disputed Claim; (ii) an amount agreed to by the Debtors, the Liquidating Trustee, or the GUC Trustee, as applicable, and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Claim is estimated by the Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors, the Liquidating Trustee, or the GUC Trustee, as applicable, and the Holder of such Disputed Claim; or (ii) the amount estimated by the Court with respect to such Disputed Claim; or (c) if the Claim is a Disallowed Claim, zero.

**1.66** **"Disputed Claims Reserve"** means the reserve established and maintained by the GUC Trust pursuant to and in accordance with the GUC Trust Agreement for the payment of Disputed Claims that become Allowed Claims after the Effective Date. The Disputed Claims Reserve need not be maintained by the GUC Trust in a segregated account.

**1.67** **"Distribution"** means the distributions to be made by the Disbursing Agent in accordance with the Plan of, as the case may be: (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

**1.68** **"Distribution Date"** means the Effective Date or the date, occurring as soon as practicable after the Effective Date, on which the initial Distributions are made to Holders of Allowed Claims.

**1.69** **"Distribution Record Date"** means the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order or any subsequent Court order.

**1.70** **"Effective Date"** means the first Business Day on which all conditions to the Consummation of the Plan set forth in Article VIII.B have been satisfied or waived in accordance with Article VIII.C.

**1.71** **"Entity"** has the meaning ascribed to such term in Bankruptcy Code section 101(15).

**1.72** **"Equity Sponsors"** means, collectively, (a)(i) Gulf Coast Health Care Holdings, LLC, PAH II, LLC, and GCMTH II, LLC, as the existing direct Holders of equity interests in the Debtors, and (ii) their direct and indirect equity owners, including BSREF III Parallel Investor I, LLC, BSREF III Parallel Investor II, L.P., BSREF III Parallel Investor III, L.P., BSREF III Parallel Investor IV, LLC, BSREF III Parallel Investor V, L.P., and Barrow Street Real Estate Fund III, L.P., and (b) Argent Properties 2012, LLC and Barrow Agent LLC, as affiliates of the foregoing equity sponsors.

**1.73** **"Estate(s)"** means, individually, the estate of any Debtor in the Chapter 11 Cases and, together, the estates of the Debtors created under Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.74** **"Executory Contract"** means a contract to which a Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**1.75** **"Exhibit"** means an exhibit attached either to the Plan or the Disclosure Statement.

**1.76** **"Existing Equity Interests"** means any and all Interests in the Debtors.

**1.77** **"Existing Operators"** means the subsidiaries of Gulf Coast currently operating the Facilities.

**1.78** **"Face Amount"** means (a) when used in referenced to a Disputed Claim or Disallowed Claim, the Disputed Claim Amount; and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

**1.79** **"Facilities"** means various skilled nursing or similar facilities operated by the Existing Operators.

**1.80** **"File"**, **"Filed"**, or **"Filing"** means, respectively, file, filed, or filing with the Court or its authorized designee in the Chapter 11 Cases.

**1.81    "Final DIP Order"** means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. [●]].

**1.82    "Final Fee Applications"** has the meaning ascribed to such term in Article IX.A.1 of the Plan.

**1.83    "Final Order"** means an order of the Court (a) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing, or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing, or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear, or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, reargument, rehearing, or new trial has been sought, as to which (i) such order of the Court shall have been affirmed by the highest court to which such order is appealed; (ii) certiorari has been denied as to such order; or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari, or move for reargument, rehearing, or new trial shall have expired without such actions having been taken.

**1.84    "General Bar Date"** means the deadline for Filing Proofs of Claim for payment of Claims other than Administrative Claims set by order of the Court.

**1.85    "General Unsecured Claim"** means a Claim against any or all of the Debtors that is not a DIP Facility Claim, Administrative Claim, Priority Tax Claim, New Ark Secured Claim, Other Secured Claim, Other Priority Claim, Omega Unsecured Claim, Subordinated Seller Note Claim, Service Provider Claim, or Intercompany Claim.

**1.86    "Governmental Unit"** has the meaning ascribed to such term in Bankruptcy Code section 101(27).

**1.87    "GUC Trust"** means the trust described in Article V.F of the Plan to be established under Delaware trust law that, among other things, may make Distributions to Holders of Omega Unsecured Claims, Subordinated Seller Note Claims, Service Provider Claims, and General Unsecured Claims pursuant to the terms of the Plan and the GUC Trust Agreement.  With respect to any action required or permitted to be taken by the GUC Trust, the term includes the GUC Trustee or any other Person or Entity authorized to take such action in accordance with the GUC Trust Agreement.

**1.88    "GUC Trust Agreement"** means the agreement establishing the GUC Trust in conformity with the provisions of the Plan, which shall be reasonably acceptable to the Omega Entities (unless Class 7 votes to accept the Plan) and approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the GUC Trustee on the Effective Date pursuant to the terms of the Plan.

**1.89    "GUC Trust Assets"** means the Unsecured Claims Cash Amount.

**1.90    "GUC Trust Committee"** means the committee created hereunder and appointed pursuant to the terms of the GUC Trust Agreement, the initial members of whom shall be reasonably acceptable to the Omega Entities.

**1.91    "GUC Trust Interests"** means the uncertificated beneficial interests in the GUC Trust representing the right of Holders of Omega Unsecured Claims, Subordinated Seller Note Claims, Service Provider Claims, and General Unsecured Claims in accordance with the terms of the Plan and the GUC Trust Agreement.

**1.92    "GUC Trustee"** means the Person or Entity appointed by the Committee to administer the GUC Trust in accordance with the terms of the Plan and the GUC Trust Agreement.

**1.93    "Gulf Coast"** means Gulf Coast Health Care, LLC.

**1.94    "Holder"** means a Person or Entity holding a Claim or Interest.

**1.95    "Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

**1.96    "Impaired Class"** means a Class of Claims or Interests that is Impaired.

**1.97    "Insured Claim"** means any Claim or portion of a Claim that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.98    "Intercompany Claims"** means any Claim held by a Debtor against another Debtor, including, without limitation, (a) any account reflecting intercompany book entries with respect to another Debtor; (b) any Claim not reflected in such book entries that is held by a Debtor against another Debtor; and (c) any derivative Claim asserted by or on behalf of one Debtor against another Debtor.

**1.99    "Interests"** means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in the Debtors, including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, call, awards, or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer, or sell any shares of capital stock whether or not certificated, transferable, voting, or denominated stock or a similar security.

**1.100    "Interim DIP Order"** means *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 72].

**1.101** **"Lien"** has the meaning ascribed to such term in Bankruptcy Code section 101(37).

**1.102** **"Liquidating Debtors"** means the Debtors on or after the Effective Date.

**1.103** **"Liquidating Trust"** means the trust described in Article V.E of the Plan to be established under Delaware trust law that shall effectuate the wind down of the Liquidating Debtors and make Distributions pursuant to the terms of the Plan and the Liquidating Trust Agreement.  With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

**1.104** **"Liquidating Trust Agreement"** means the agreement establishing the Liquidating Trust in conformity with the provisions of the Plan, which shall be reasonably acceptable to the Omega Entities and approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Liquidating Trustee on the Effective Date pursuant to the terms of the Plan.

**1.105** **"Liquidating Trust Assets"** means, collectively, (a) the Debtors' Cash on the Effective Date; (b) the Debtors' accounts receivable existing as of the Effective Date; (c) proceeds of the Retained Causes of Action; and (d) all other assets of the Debtors, including all prepetition accounts receivable, except the Prepetition A/R Reserve and the Unsecured Claims Cash Amount; *provided*, *however*, that any funds remaining in the Prepetition A/R Reserve after payment in full of the New Ark Secured Claim shall be Liquidating Trust Assets.

**1.106** **"Liquidating Trustee"** means the Person or Entity determined by the DIP Agent to be appointed in consultation with the Debtors in accordance with Article V.E hereof to administer the Liquidating Trust in accordance with the terms of the Plan  and the Liquidating Trust Agreement.

**1.107** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.108** **"Master Tenant I"** means Gulf Coast Master Tenant I, LLC.

**1.109** **"New Ark"** means New Ark Capital, LLC.

**1.110** **"New Ark Budget"** means the budget associated with the New Ark Funding.

**1.111** **"New Ark Funding"** means the use of Cash Collateral of the Prepetition Lenders solely to the extent necessary to provide funding for those amounts and during the applicable period set forth in the New Ark Budget, subject to permitted variances thereto, which amounts shall be withdrawn from the Prepetition Loan Account and deposited into the New Ark Reserve Account on a weekly basis to reserve for Professional Fee Claims and other expenses set forth in the New Ark Budget and disbursed by the Debtors or the Liquidating Trust, as applicable, to the respective beneficiaries thereof on the terms and subject to the conditions substantially set forth in the DIP Term Sheet and the DIP Orders.

**1.112** **"New Ark Reserve Account"** means the segregated escrow account maintained for the New Ark Funding that serves as a reserve for Professional Fee Claims and other expenses set forth in the New Ark Budget.

**1.113** **"New Ark Secured Claim"** means New Ark's Allowed secured Claim against the Debtors for amounts owed under the Credit Agreement, which the Debtors stipulate and agree is an allowed senior secured Claim for the outstanding obligations under the A/R Working Capital Line in an amount equal to $14,343,316.85 as of October 13, 2021, inclusive of fees, interest, and attorneys' fees (in each case accrued prior to the Petition Date) due and owing under the Credit Agreement, plus interest accruing postpetition.

**1.114** **"New Blue Mountain Operator(s)"** means the party or parties designated by the Blue Mountain Landlords, in their sole and absolute discretion, to effectuate the Blue Mountain MOTA(s) and the transactions contemplated thereunder.

**1.115** **"New Membership Interests"** has the meaning ascribed to such term in Article V.B.1 of the Plan.

**1.116** **"New Omega Operator(s)"** means the party or parties designated by the Omega Landlords (or any successor thereof), in their sole and absolute discretion, to effectuate the Omega MOTA(s) and the transactions contemplated thereunder.

**1.117** **"Objection(s)"** means any objection, application, motion, complaint, or other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.118** **"Official Bankruptcy Forms"** means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised, or supplemented from time to time.

**1.119** **"Omega Entities"** means, collectively, the DIP Agent and the Omega Landlords.

**1.120** **"Omega Facilities"** means the Facilities leased from the Omega Landlords.

**1.121** **"Omega Landlords"** means the affiliates of the DIP Agent identified as "Landlords" under the Master Lease.

**1.122** **"Omega Leased Property"** means all or any portion or portions of the property subject to the Omega Master Lease.

**1.123** **"Omega Master Lease"** means, collectively, that certain Second Consolidated Amended and Restated Master Lease Agreement, effective July 1, 2013, as amended by that certain First Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of October 2, 2013, that certain Second Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of October 1, 2014, that certain Third Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of September

29, 2015, that certain Fourth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of February 25, 2016, that certain Fifth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of May 26, 2016, that certain Sixth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of December 15, 2016, that certain Seventh Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of January 26, 2017, that certain Eighth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of June 8, 2017, that certain Ninth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of December 19, 2017, that certain Tenth Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of July 6, 2018, and that certain Eleventh Amendment to Second Consolidated Amended and Restated Master Lease Agreement, dated as of August 19, 2019 between Master Tenant I and the Omega Landlords.

**1.124 "Omega MOTA Order"** means an order or, collectively, orders, in form and substance satisfactory to the Omega Entities (including the DIP Agent), of the Court approving, among other things, the Debtors' entry into the Omega MOTA(s).

**1.125 "Omega MOTA(s)"** means one or more management and operations transfer agreements satisfactory to the Debtors, the Omega Entities (including the DIP Agent), and one or more New Omega Operator(s) and reasonably acceptable to New Ark, and customary for similar transactions, and under which New Omega Operator(s) shall be, in accordance with the terms of the Omega MOTA(s), responsible for funding all operating costs of and shall be entitled to all payments generated by the Omega Leased Property on and after the date the New Omega Operator(s) assume responsibility for operating the Omega Leased Property.

**1.126 "Omega Portfolio"** means the real estate, operations, and related assets of the Omega Facilities.

**1.127 "Omega Prepetition Rent Claim"** means a claim in the amount of $237,711,978, which is the amount of accrued prepetition rent and other payments, charges, and impositions due and owing under the Omega Master Lease as of the Petition Date.

**1.128 "Omega Rejection Damages Claim"** means a claim in the amount of $35,904,343, which is the amount of rejection damages arising upon the rejection of the Omega Master Lease, as capped under Bankruptcy Code section 502(b)(6).

**1.129 "Omega Unsecured Claim"** means the Omega Entities' Allowed Claim against the Debtors in the amount of $48,996,164 for amounts owed under the Omega Master Lease, comprising (a) an Allowed unsecured Claim for the Omega Prepetition Rent Claim; and (b) an Allowed unsecured Claim for the Omega Rejection Damages Claim. For the avoidance of doubt, the Omega Unsecured Claim is an Allowed Claim in the amount of $48,996,164.

**1.130 "Omega/Delta Subordination Agreement"** that certain Amended and Restated Subordination Agreement between certain of the Debtors, Omega Healthcare Investors, Inc., and the Delta Group dated as of July 6, 2018.

**1.131** **"Operations Transfer Date"** means the earliest date upon which a management and operations transfer agreement between (i) the Existing Operators and (ii) the New Blue Mountain Operator(s) or the New Omega Operator(s), as applicable, becomes effective.  For the avoidance of doubt, the Operations Transfer Date with respect to the New Omega Operator(s) may occur before, on, or after the Operations Transfer Date with respect to the New Blue Mountain Operator(s), and vice versa.

**1.132** **"Ordinary Course Professionals"** means those professionals authorized to be paid by the Debtors pursuant to a Final Order of the Court authorizing the payment and employment of professionals used in the ordinary course of business.

**1.133** **"Other Priority Claims"** means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), other than a Priority Tax Claim or an Administrative Claim.

**1.134** **"Other Secured Claim"** means a Claim, other than a DIP Facility Claim**,** New Ark Secured Claim, or Subordinated Seller Note Claim, (a) that is secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order; or (b) that is subject to setoff under Bankruptcy Code section 553 and such right of setoff has been asserted by the holder of such right prior to the Confirmation Date in a properly Filed motion for relief from the automatic stay, to the extent of the value of the Holders' interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a).

**1.135** **"Patient Care Ombudsman"** means Daniel McMurray, who was appointed to serve as the patient care ombudsman in these Chapter 11 Cases by order of the Bankruptcy Court.

**1.136** **"Periodic Distribution Date"** means the date selected by the Liquidating Trustee or the GUC Trustee, as applicable, for making a Distribution to Holders of Allowed Claims in accordance with the Liquidating Trust Agreement or the GUC Trust Agreement, respectively.

**1.137** **"Person"** has the meaning ascribed to such term in Bankruptcy Code section 101(41).

**1.138** **"Petition Date"** means October 14, 2021, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

**1.139** **"Plan"** means this chapter 11 plan of liquidation proposed by the Debtors, including all exhibits and schedules attached hereto or otherwise incorporated herein, as such Plan may be altered, amended, modified, or supplemented from time to time, including in accordance with its terms, the Bankruptcy Code, and the Bankruptcy Rules.

**1.140** **"Plan Supplement"** means the compilation(s) of documents and forms of documents, including any exhibits to the Plan not included herewith, that the Debtors shall file with the Court on or before the Plan Supplement Filing Date and may be amended from time to time prior to the Effective Date.

**1.141   "Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be filed with the Court, which date shall be at least five days prior to the Voting Deadline or such other date as may be approved by the Court without further notice to parties-in-interest.

**1.142   "Portfolio"** means, collectively, the Omega Portfolio and Blue Mountain Portfolio.

**1.143   "Prepetition A/R Reserve"** means Cash in the amount of all accounts receivable collected by the Debtors on or after the Petition Date on account of services rendered prior to the Petition Date, including, without limitation, cash in the Prepetition Loan Account and any excess funds in the New Ark Reserve Account.

**1.144   "Prepetition Lenders"** means the lenders from time to time party to the Credit Agreement.

**1.145   "Prepetition Loan Account"** means a segregated account acceptable to New Ark in its sole discretion, holding accounts receivable collected by the Debtors on or after the Petition Date on account of services rendered prior to the Petition Date.

**1.146   "Priority Tax Claim"** means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a)(8).

**1.147   "Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**1.148   "Professional"** means any professional employed by the Debtors, the Committee, or the Patient Care Ombudsman in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 and professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(4), other than Ordinary Course Professionals.

**1.149   "Professional Fee Bar Date"** means the deadline for Filing all applications for Professional Fee Claims, which shall be 45 days the Effective Date, as set forth in Article IX.A.1 of the Plan.

**1.150   "Professional Fee Claim"** means a Claim of a Professional pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503(b) for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.151   "Professional Fee Order"** means the Final Order establishing procedures for the interim compensation and reimbursement of Professionals.

**1.152   "Proof of Claim"** means the proof of claim that must be Filed before the applicable bar date, which term shall include a request for payment of an Administrative Claim.

**1.153   "Rejection Bar Date"** means the deadline by which a counterparty to a rejected Executory Contract or Unexpired Lease of the Debtor must File a Proof of Claim for damages

resulting from the rejection of such Executory Contract or Unexpired Lease by the Debtor, which deadline shall be the later of: (a) the General Bar Date; (b) 30 days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

**1.154** **"Related Parties"** means, each of the following, in each case only in its capacity as such: predecessors, successors, affiliates, subsidiaries, direct and indirect equity holders, members (including managing members), directors, managers, officers, principals, employees, partners, trusts, trustees, independent contractors, agents, representatives, managed accounts or funds, agents, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

**1.155** **"Released Parties"** means (a) the Debtors; (b) New Ark; (c) the DIP Lender; (d) the Omega Entities; (e) the Equity Sponsors; (f) the Service Providers; and (g) each of the Related Parties of each Person or Entity in the foregoing clauses (a) through (f).

**1.156** **"Restructuring Support Agreement"** means that certain Restructuring Support Agreement, and all of the schedules, documents, and exhibits contained therein and attached thereto, entered into on October 14, 2021 by and among the Debtors, the Omega Entities, the Equity Sponsors, the Service Providers, and New Ark, as filed at Docket No. 16-1.

**1.157** **"Restructuring Transactions"** means the transactions described in Article V of the Plan.

**1.158** **"Retained Causes of Action"** means all Causes of Action, other than those released by Article X.D.1.

**1.159** **"Scheduled"** means, with respect to any Claim, the status and amount, if any, of that Claim as set forth in the Schedules.

**1.160** **"Schedules"** means the schedules of assets and liabilities, schedules of executory contracts, and statements of financial affairs Filed by each Debtor pursuant to Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009 or any orders of the Court.

**1.161** **"Service Provider Claims"** means, collectively, (a) the Allowed unsecured Claim of Health Care Navigator, LLC in the amount of $2,405,990.80, (b) the Allowed unsecured Claim of Halcyon Rehabilitation, LLC in the amount of $3,662,733.53, and (c) the Allowed unsecured Claim of HMS Purchasing, LLC in the amount of $339,194.15.

**1.162** **"Service Providers"** means, collectively, Health Care Navigator, LLC, Halcyon Rehabilitation, LLC, and HMS Purchasing, LLC.

**1.163** **"Solicitation Procedures Order"** means the *Order (A) Approving Disclosure Statement; (B) Scheduling Hearing on Confirmation of Plan; (C) Establishing Deadlines and Procedures for (I) Filing Objections to Confirmation of Plan, (II) Claim Objections, and (III) Temporary Allowance of Claims for Voting Purposes; (D) Determining Treatment of Certain Unliquidated,*

*Contingent, or Disputed Claims for Notice, Voting, and Distribution Purposes; (E) Setting Record Date; (F) Approving (I) Solicitation Packages and Procedures for Distribution, (II) Form of Notice of Hearing on Confirmation and Related Matters, and (III) Forms of Ballots; (G) Establishing Voting Deadline and Procedures for Tabulation of Votes; and (H) Granting Related Relief* [Docket No. [●]].

**1.164 "Subordinated Seller Note"** means that certain promissory note, dated as of July 6, 2018, by and between certain of the Debtors and the Delta Group (as amended, restated, consolidated, superseded, modified, or supplemented from time to time).

**1.165 "Subordinated Seller Note Claims"** means Claims arising under the Subordinated Seller Note.

**1.166 "Substantial Contribution Claim"** means a Claim under Bankruptcy Code subsections 503(b)(3), (b)(4), or (b)(5) for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Cases.

**1.167 "Substantive Consolidation Order"** means the order of the Court, which may be the Confirmation Order, authorizing substantive consolidation of the Estates pursuant to Article V.A.

**1.168 "Tax"** or **"Taxes"** means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, levies, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority with respect thereto.

**1.169 "Third-Party Releasing Parties"** means the Holders of Claims who vote to accept the Plan; *provided*, *however*, that the Omega Entities shall not be Third-Party Releasing Parties.

**1.170 "Top Level Debtors"** has the meaning ascribed to such term in Article V.B.1 of the Plan.

**1.171 "U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**1.172 "U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

**1.173 "Unexpired Lease(s)"** means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**1.174 "Unimpaired"** means, when used in reference to a Claim or a Class, a Claim or a Class that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.175 "Unsecured Claims Cash Amount"** means $[●] in Cash, which will be contributed on the Effective Date to the Debtors by one or more of New Ark and the Equity Sponsors.

**1.176 "Voting Deadline"** means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

**1.177** **"Wells Fargo"** means Wells Fargo Bank, N.A.

## C.     Rules of Interpretation

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, schedules, and Exhibits are references to Sections, Articles, schedules, and Exhibits of or to the Plan; (d) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

## D.     Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (a) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of organization of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## F.     Consent Rights

All rights, including consent rights, provided under the Restructuring Support Agreement are not affected, modified, or vacated by the terms of the Plan and shall remain in full force and effect until the termination of the Restructuring Support Agreement or as otherwise provided by the Restructuring Support Agreement.

**ARTICLE II.**
**UNCLASSIFIED CLAIMS**

## A.     DIP Facility Claim

On the Effective Date, each Holder of an Allowed DIP Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, its Pro Rata share of the Liquidating Trust Assets, after (i) satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, and (ii) paying, reserving against, or satisfying, among other

things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all reasonable and documented costs, expenses, and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust with the reasonable consent of the Omega Entities) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

For the avoidance of doubt, to the extent that the Liquidating Trust Assets are insufficient to satisfy the DIP Lender in full on account of the DIP Facility Claim, the DIP Lender shall receive no additional consideration on account of the DIP Facility Claim, subject to Consummation of the Plan.

## B.    Administrative Claims

Unless a Holder agrees to less favorable treatment, each Holder of an Allowed Administrative Claim (including all Professional Fee Claims) shall have such Claim satisfied in full, in Cash, which payments shall be made in the ordinary course of business or on the later of the Effective Date and the date on which such Claim becomes an Allowed Claim (or as soon as reasonably practicable thereafter), or otherwise receive treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9)(2).

Notwithstanding the foregoing, and subject to consummation of the Plan, (a) if the Omega MOTA Order is entered, the Omega Entities shall not receive any recovery on account of any Administrative Claim of which an Omega Entity is the Holder; and (b) New Ark shall waive any Administrative Claim of which New Ark is the Holder; *provided*, *however*, that, for the avoidance of doubt, clause (a) of the foregoing sentence does not include or cover Allowed Administrative Claims of any New Omega Operator(s) or the assignee of such claims, including an Omega Entity (in its capacity as assignee).

## C.    Priority Tax Claims

Unless a Holder agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9)(C).

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

## A.    Introduction

All Claims and Interests, except the DIP Facility Claim, Administrative Claims, and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims, as described above, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A

Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**B.     Summary**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including, without limitation, for voting, confirmation, and distribution pursuant hereto and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | New Ark Secured Claim | Impaired | *Entitled to Vote* |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Omega Unsecured Claims | Impaired | *Entitled to Vote* |
| 5 | Subordinated Seller Note Claims | Impaired | *Entitled to Vote* |
| 6 | Service Provider Claims | Impaired | *Entitled to Vote* |
| 7 | General Unsecured Claims | Impaired | *Entitled to Vote* |
| 8 | Intercompany Claims | Impaired | Deemed to Reject |
| 9 | Existing Equity Interests | Unimpaired/Impaired | Deemed to Accept/ Deemed to Reject |

**C.     Classification and Treatment of Claims and Interests**

**1.     Class 1: New Ark Secured Claim**

Classification.  Class 1 consists of the New Ark Secured Claim.

Treatment.  On the Effective Date, the Holder of the New Ark Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, payment from the Prepetition A/R Reserve in Cash in the amount of the New Ark Secured Claim, less the amount of the New Ark Funding; *provided*, *however*, that if there are insufficient funds in the Prepetition A/R Reserve to provide payment in full of the New Ark Secured Claim (less the amount of the New Ark Funding), New Ark (or its designees) shall waive any such deficiency, subject to and upon Consummation of the Plan.

Voting.  Class 1 is Impaired, and the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan.

**2.     Class 2: Other Secured Claims**

Classification.  Class 2 consists of the Other Secured Claims.

Treatment.  On the Effective Date (or as promptly thereafter as reasonably practicable), each Holder of an Allowed Other Secured Claim shall receive, in the sole discretion of the Liquidating Trust and in full and final satisfaction of such Claim, (a) payment in full by the Liquidating Trust in Cash, including the payment of any interest Allowed and payable under

Bankruptcy Code section 506(b); (b) delivery of the collateral securing such Allowed Other Secured Claim; or (c) treatment of such Allowed Other Secured Claim in any other matter that renders the Claim Unimpaired.

Voting. Class 2 is Unimpaired, and the Holders of Claims in Class 2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.      **Class 3: Other Priority Claims**

Classification. Class 3 consists of the Other Priority Claims.

Treatment. On the Effective Date, each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with Bankruptcy Code section 1129(a)(9).

Voting. Class 3 is Unimpaired, and the Holders of Claims in Class 3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

4.      **Class 4: Omega Unsecured Claim**

Classification. Class 4 consists of the Omega Unsecured Claim.

Treatment. On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, the Holders of the Omega Unsecured Claim shall receive Pro Rata Distribution with Class 5, Class 6, and Class 7 of the GUC Trust Interests; *provided*, *however*, that notwithstanding the foregoing, pursuant to the Omega/Delta Subordination Agreement, any Cash Distribution received by the Holders of Subordinated Seller Note Claims on account of their GUC Trust Interests will be paid to the Holders of the Omega Unsecured Claim until the Omega Unsecured Claim is paid in full; *provided further*, *however*, that if Class 7 votes to accept the Plan, then the Holders of the Omega Unsecured Claim shall contribute to the Holders of Class 7 General Unsecured Claims (i) their Pro Rata Distribution of the GUC Trust Interests and (ii) any Cash Distribution received from the Holders of Subordinated Seller Note Claims pursuant to the Omega/Delta Subordination Agreement, to be shared by the Holders of Class 7 General Unsecured Claims on a Pro Rata basis.

Voting. Class 4 is Impaired, and Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.      **Class 5: Subordinated Seller Note Claims**

Classification. Class 5 consists of Subordinated Seller Note Claims.

Treatment. On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, each Holder of a Subordinated Seller Note Claim shall receive a Pro Rata Distribution with Class 4, Class 6, and Class 7 of the GUC Trust Interests.

Notwithstanding the foregoing, pursuant to the Omega/Delta Subordination Agreement and Bankruptcy Code section 510, the Cash Distributions received from the GUC Trust by the Holders of Subordinated Seller Note Claims will be paid to the Holders of the Omega Unsecured Claim until the Omega Unsecured Claim is paid in full.

Voting.  Class 5 is Impaired, and Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.      **Class 6: Service Provider Claims**

Classification.  Class 6 consists of Service Provider Claims.

Treatment.  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, the Holders of Allowed Service Provider Claims shall receive Pro Rata Distribution with Class 4, Class 5, and Class 7 of the GUC Trust Interests; *provided*, *however*, that if Class 7 votes to accept the Plan, then the Holders of Service Provider Claims shall contribute their Pro Rata Distribution of the GUC Trust Interests to the Holders of Class 7 General Unsecured Claims, each of whom shall receive their respective Pro Rata Distribution of all such amounts.

Voting.  Class 6 is Impaired, and Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.      **Class 7: General Unsecured Claims**

Classification.  Class 7 consists of General Unsecured Claims.

Treatment.  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Claim, each Holder of a General Unsecured Claim shall receive a Pro Rata Distribution with Class 4, Class 5, and Class 6 of the GUC Trust Interests; *provided*, *however*, that if Class 7 votes to accept the Plan, then (a) the Holders of the Omega Unsecured Claim shall contribute (i) their Pro Rata Distribution of the GUC Trust Interests and (ii) any Cash Distribution received from the Holders of Subordinated Seller Note Claims pursuant to the Omega/Delta Subordination Agreement to the Holders of Class 7 General Unsecured Claims, and (b) the Holders of the Service Provider Claims shall contribute their Pro Rata Distribution of the GUC Trust Interests to the Holders of Class 7 General Unsecured Claims, and each Holder of a Class 7 General Unsecured Claim shall receive their respective Pro Rata Distribution of all such contributed GUC Trust Interests and amounts.

Voting.  Class 7 is Impaired, and Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

8.      **Class 8: Intercompany Claims**

Classification.  Class 8 consists of Intercompany Claims.

Treatment.  On the Effective Date, each Intercompany Claim shall be cancelled, released, and extinguished, and each Holder of an Intercompany Claim shall not be entitled to, and shall

not receive or retain, any property or interest in property on account of such Intercompany Claim.

Voting. Class 8 is Impaired. Because the Holders of such Intercompany Claims will not receive any distributions pursuant to the Plan, they are therefore conclusively deemed, pursuant to Bankruptcy Code section 1126(g), to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

9.      **Class 9: Existing Equity Interests**

Classification. Class 9 consists of Existing Equity Interests.

Treatment. On the Effective Date, all Existing Equity Interests in the Top Level Debtors will be cancelled, released, and extinguished, and each such Holder of an Existing Equity Interest shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Existing Equity Interest.

On the Effective Date, all Existing Equity Interests in the Debtors other than the Top Level Debtors shall be (a) reinstated solely to the extent necessary to maintain the Debtors' corporate structure post-Effective Date or (b) cancelled, released, or extinguished, as determined by the Debtors in their business judgment.

Voting. Holders of Existing Equity Interests are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f) or deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

D.      **Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and/or the Liquidating Trust with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

E.      **Allowed Claims**

Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Liquidating Trustee and the GUC Trustee may, in their discretion, withhold Distributions otherwise due hereunder to any Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be Filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date shall receive its Distribution in accordance with the terms and provisions of the Plan, the Liquidating Trust Agreement, and/or the GUC Trust Agreement, as applicable.

**F.**     **Special Provisions Regarding Insured Claims**

Distributions under the Plan to each Holder of an Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Insured Claim is classified; *provided*, *however*, that the maximum amount of any Distribution under the Plan on account of an Allowed Insured Claim shall be limited to an amount equal to: (a) the applicable deductible or self-insured retention under the relevant insurance policy minus (b) any reimbursement obligations of the Debtors to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs); *provided further*, *however*, that, to the extent that a Holder of a Claim has an Allowed Insured Claim, the amount of which exceeds the total coverage available from the relevant insurance policies of the Debtors, such Holders of Claims shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the coverage available from the relevant Debtor's insurance policies. Nothing in this Section shall constitute a waiver of any Cause of Action the Debtors may hold against any Person or Entity, including the Debtors' insurance carriers, or is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to any Distribution such Holder may receive under the Plan; *provided*, *however*, that the Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

The Plan shall not expand the scope of, or alter in any other way, the obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any Proof of Claim or the Debtors' rights and defenses to such Proofs of Claim.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.**     **Acceptance by an Impaired Class**

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**B.**     **Presumed Acceptances by Unimpaired Classes**

Class 2 and Class 3 are Unimpaired by the Plan. Under Bankruptcy Code section 1126(f), such Holders of Claims are conclusively presumed to accept the Plan, and the votes of Holders of such Claims shall not be solicited.

## C.    Class Deemed to Reject Plan

Holders of Claims in Class 8 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), such Claim Holders are deemed to reject the Plan, and the votes of such Holders of Claims shall not be solicited.

## D.    Impaired Classes of Claims Entitled to Vote

Because Claims in Class 1, Class 4, Class 5, Class 6, and Class 7 are Impaired under the Plan and Holders of such Claims shall receive or retain property under the Plan, Holders of Claims in such Classes are entitled to vote and shall be solicited with respect to the Plan.

## E.    Class Presumed to Accept or Deemed to Reject

Holders of Interests in Class 9 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Holders of Interests in Class 9 are not entitled to vote on the Plan.

## F.    Vacant Classes

Any Class or sub-Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by at least one Allowed Claim or Allowed Interest, as applicable, or at least one Claim or Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall not be included for purposes of (a) voting on the acceptance or rejection of the Plan and (b) determining acceptance or rejection of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

## G.    Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because Class 8 is deemed to reject the Plan, the Debtors shall (a) seek Confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in Bankruptcy Code section 1129(b) and/or (b) modify the Plan in accordance with Article XII.A hereof.  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## H.    Existing Equity Interests

To the extent reinstated under the Plan, distributions on account of Existing Equity Interests are not being received by Holders of such Existing Equity Interests on account of their Existing Equity Interests, but for the purposes of administrative convenience, in order to maintain the Debtors' corporate structure as the Liquidating Debtors post-Effective Date.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Substantive Consolidation**

**1.      Consolidation of the Chapter 11 Estates**

The Plan contemplates and is predicated upon entry of an order substantively consolidating the Debtors' Estates and Chapter 11 Cases for all purposes, including voting, Distribution, and Confirmation.  On the Effective Date, (a) all Intercompany Claims between the Debtors shall be eliminated; (b) all assets and liabilities of the Affiliate Debtors shall be merged or treated as if they were merged with the assets and liabilities of Gulf Coast; (c) any obligation of a Debtor and any guarantee thereof by another Debtor shall be deemed to be one obligation of Gulf Coast, and any such guarantee shall be eliminated; (d) each Claim Filed or to be Filed against any Debtor shall be deemed Filed only against Gulf Coast and shall be deemed a single Claim against and a single obligation of Gulf Coast; and (e) any joint or several liability of the Debtors shall be deemed one obligation of Gulf Coast.  On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.

The substantive consolidation effected pursuant to this Article V.A.1 of the Plan (a) shall not affect the rights of any Holder of a secured Claim; and (b) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in Article X.D), which shall survive entry of the Substantive Consolidation Order, as if there had been no substantive consolidation.

**2.      Substantive Consolidation Order**

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors' Chapter 11 Cases.  If no objection to substantive consolidation is timely Filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the deadline to object to Confirmation of the Plan, or such other date as may be fixed by the Court, the Substantive Consolidation Order (which may be the Confirmation Order) may be approved by the Court.  If any such objections are timely Filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

**B.      Corporate Action**

**1.      Distribution of New Membership Interests**

On the Effective Date, (a) all membership interests in Debtors Gulf Coast, Pensacola Administrative Holdings, LLC, and Gulf Coast Master Tenant Holdings, LLC (collectively, the "**Top Level Debtors**") shall be cancelled; (b) the Top Level Debtors' managers, and all of the Debtors' officers, shall be deemed to have resigned; (c) each of the Top Level Debtors shall issue one membership interest (collectively, the "**New Membership Interests**") to the

Liquidating Trust and the Liquidating Trust shall be the sole member of each Top Level Debtor; (d) the Liquidating Trustee shall serve as the sole manager of each Top Level Debtor, and the sole officer of each of the Liquidating Debtors.

## 2. Continued Corporate Existence

The Debtors shall continue to exist after the Effective Date for the limited purposes of disposing of the assets of the Debtors' Estates, to the extent necessary, and complying with and fulfilling their obligations under the Liquidating Trust Agreement and the Plan. The organizational documents of the Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Bankruptcy Code section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Bankruptcy Code section 1123(a)(6).

The Debtors, the Liquidating Debtors, and the Liquidating Trustee acting pursuant to the terms and conditions of the Liquidating Trust Agreement, as applicable, shall be authorized to execute, deliver, file, or record such documents, instruments, releases, and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## 3. Dissolution

As soon as practicable after the Liquidating Trust exhausts the assets of the Debtors' Estates by making the final Distribution under the Plan and the Liquidating Trust Agreement and has complied with and fulfilled its obligations under the Plan, the Liquidating Trustee shall, (a) destroy the Books and Records, as authorized by Confirmation Order; (b) File a certification stating that the assets of the Debtors' Estates have been exhausted and final Distributions have been made under the Plan; (c) file the necessary paperwork to effectuate the dissolution of the Liquidating Debtors in accordance with the laws of their respective states of organization; (d) resign as the sole manager and/or sole officer of the Liquidating Debtors. Upon the Filing of the certificate described in section (b) of the preceding sentence, the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith.

## 4. Cancellation of Old Securities and Agreements

Except as otherwise provided in the Plan, and in any contract, instrument, or other agreement or document created in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article III hereof, any promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, other than a Claim or Interest that is being reinstated and rendered unimpaired, and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire such Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule.

5.      **No Further Action**

Each of the matters provided for under the Plan involving the organizational structure of the Debtors or corporate or limited liability company action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person or Entity, including but not limited to, the Liquidating Trustee, Holders of Claims or Interests against or in the Debtors, or directors, managers, or officers of the Debtors or Liquidating Debtors.

**C.      Books and Records; Privilege Matters**

1.      **Access to Debtors' Books and Records**

On or as reasonably practicable after the Effective Date, the Liquidating Debtors shall transfer non-privileged Books and Records related to Claims to be liquidated by the GUC Trust to the GUC Trust.

2.      **Transfer of Privilege**

On the Effective Date, the Liquidating Trust shall succeed to the evidentiary privileges (including attorney-client, joint-client, joint-defense, common interest and other privileges) formerly held by the Debtors.  Accordingly, to the extent that documents are requested from current counsel to the Debtors by any Person or Entity, after the Effective Date, only the Liquidating Trust shall have the ability to waive such attorney-client privilege.  Current counsel to the Debtors shall have no obligation to produce any documents currently in their possession as a result of or arising in any way out of their representation of the Debtors unless (a) the Person or Entity requesting such documents serves their request on the Liquidating Trust; and (b) the Liquidating Trust consents in writing to such production and any waiver of the attorney-client privilege such production might cause.  Upon the third anniversary of the termination of the Liquidating Trust Agreement, any and all documents in the possession of the Debtors' current counsel as a result of or arising in any way out of their representation of the Debtors, respectively, shall be deemed destroyed and no Person or Entity shall be entitled to obtain such documents.

On the Effective Date, the GUC Trust shall succeed to the evidentiary privileges (including attorney-client, joint-client, joint-defense, common interest and other privileges) formerly held by the Committee.  Accordingly, to the extent that documents are requested from current counsel to the Committee by any Person or Entity, after the Effective Date, only the GUC Trust shall have the ability to waive such attorney-client privilege.  Current counsel to the Committee shall have no obligation to produce any documents currently in their possession as a result of or arising in any way out of their representation of the Committee unless (a) the Person or Entity requesting such documents serves their request on the GUC Trust; and (b) the GUC Trust consents in writing to such production and any waiver of the attorney-client privilege such production might cause.  Upon the third anniversary of the termination of the GUC Trust Agreement, any and all documents in the possession of the Committee's current counsel as a

result of or arising in any way out of their representation of the Committee shall be deemed destroyed and no Person or Entity shall be entitled to obtain such documents.

## D.   Dissolution of the Committee

Any Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code section 1103 and shall perform such other duties as it may have been assigned by the Court prior to the Effective Date.  On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate, except with respect to (a) all Professional Fee Claims; and (b) any appeals of the Confirmation Order.  All expenses of Committee members and the reasonable fees and expenses of their Professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Professional Fee Order.  For the avoidance of doubt, and notwithstanding anything in the Plan, no member of the Committee shall be reimbursed for any attorneys' fees and expenses incurred by such member except by order of the Court upon a separate application Filed by such member and following a hearing upon proper notice.

## E.   Liquidating Trust

On the Effective Date, the Liquidating Debtors shall enter into the Liquidating Trust Agreement to establish the Liquidating Trust in form and substance satisfactory to the Omega Entities (including the DIP Agent) for the purposes of, among other things, collecting all accounts receivable outstanding as of the Effective Date, liquidating and distributing the Liquidating Trust Assets as required under the Plan and the Liquidating Trust Agreement, and winding down the Liquidating Debtors, with no objective to continue or engage in the conduct of a trade of business.

The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

The Liquidating Trust shall be administered by the Liquidating Trustee, who shall be selected by the Omega Entities (including the DIP Agent) in consultation with the Debtor.  The DIP Agent may remove and replace the Liquidating Trustee at any time and for any reason with or without cause.  In the event of an inconsistency between the Plan and the Liquidating Trust Agreement as such conflict relates to anything other than the establishment of the Liquidating Trust, the Liquidating Trust Agreement shall control.  All compensation for the Liquidating Trustee and other costs of administration shall be paid from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement.

In his or her sole discretion, the Liquidating Trustee may enter into one or more transition services agreements with the Service Providers on terms to be mutually agreed upon by the Liquidating Trustee and the Service Providers with the consent of the Omega Entities.

F.    **GUC Trust**

1.    **Establishment and Administration of the GUC Trust**

On the Effective Date, the GUC Trust shall be established pursuant to the GUC Trust Agreement for the purpose of, among other things, (a) holding and administering the GUC Trust Assets; (b) prosecuting any objections to Claims that the GUC Trustee deems appropriate and resolving such objections; (c) retaining professionals or other advisors to assist in the performance of its duties; and (d) making Distributions from the GUC Trust to Holders of Allowed Omega Unsecured Claims, Allowed Subordinated Seller Note Claims, Allowed Service Provider Claims, and Allowed General Unsecured Claims as provided for in the Plan and/or the GUC Trust Agreement.

Upon execution of the GUC Trust Agreement, the GUC Trustee shall be authorized to take all steps necessary to complete the formation of the GUC Trust.  The GUC Trust shall be administered by the GUC Trustee in accordance with the GUC Trust Agreement.

2.    **Assets of the GUC Trust**

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or Liquidating Debtors, as applicable, shall transfer and assign to the GUC Trust all of their right, title, and interest in and to all of the GUC Trust Assets, and in accordance with Bankruptcy Code section 1141, all such assets shall automatically vest in the GUC Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Holders of GUC Trust Interests as set forth in the Plan and the expenses of the GUC Trust as set forth herein and in the GUC Trust Agreement.  Thereupon, neither the Debtors nor the Liquidating Debtors shall have any interest in or with respect to the GUC Trust Assets.

3.    **GUC Trust Interests**

On the Effective Date, each Holder of an Allowed Omega Unsecured Claim, Subordinated Seller Note Claim, Service Provider Claim, and General Unsecured Claim shall, by operation of the Plan, be deemed to have received its uncertificated Pro Rata share of the GUC Trust Interests pursuant to the terms of the Plan.  GUC Trust Interests shall be reserved for Holders of Disputed Claims and issued by the GUC Trust to, and held by the GUC Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Claims.  No other Person or Entity shall have any interest, legal, beneficial, or otherwise, in the GUC Trust Assets upon the assignment and transfer of such assets to the GUC Trust.

As set forth in the GUC Trust Agreement, Distributions from the GUC Trust on account of GUC Trust Interests shall be made from the GUC Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the GUC Trust, including but not limited to all costs, expenses, and obligations incurred by the GUC Trustee (or professionals who may be employed by the GUC Trustee in administering the GUC Trust) in carrying out their responsibilities to the GUC Trust under the GUC Trust Agreement, or in any manner connected, incidental, or related thereto.

The GUC Trust Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law.  Holders of GUC Trust Interests, in such capacity, shall have no voting rights or any authority over the activities of the GUC Trust.  The GUC Trust shall have a term of three years from the Effective Date, without prejudice to the rights of the GUC Trust to request extension of such term from the Court for good cause shown.

### 4.    Appointment of a GUC Trustee

The identity of the GUC Trustee shall be disclosed pursuant to a notice filed not less than five Business Days prior to the Voting Deadline.  The appointment of the GUC Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  The GUC Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and GUC Trust Agreement.

### 5.    Creation of GUC Trust Committee and Procedures Related Thereto

The GUC Trust Committee shall consist of three members, the identities of which shall be disclosed pursuant to a notice filed not less than five Business Days prior to the Voting Deadline.  Each member of the GUC Trust Committee shall be entitled to vote on certain matters related to objections to Claims the Holders of which hold GUC Trust Interests and the settlement, resolution, or other disposition of GUC Trust Assets, as provided for in the GUC Trust Agreement.  Members of the GUC Trust Committee shall serve without compensation, but shall be entitled to reimbursement of reasonable expenses.

### 6.    Standing of the GUC Trust

The GUC Trust shall have independent standing to appear and be heard in the Court as to any matter relating to the Debtors, the Plan, or the GUC Trust Agreement, including any matter as to which the Court has retained jurisdiction pursuant to Article XI.A of the Plan.

### 7.    Function and Duration of the GUC Trust Committee

The GUC Trust Committee shall have the rights and responsibilities set forth in the Plan and the GUC Trust Agreement.  The GUC Trust Committee shall remain in existence until such time as the final Distributions under the GUC Trust Agreement have been made, as set forth more fully in the GUC Trust Agreement.

### 8.    Recusal of GUC Trust Committee Members

A GUC Trust Committee member shall recuse himself or herself from any decisions or deliberations regarding actions taken or proposed to be taken by the GUC Trust with respect to the Claims, Causes of Action, or rights of such GUC Trust Committee member, the entity appointing such GUC Trust Committee member, or any affiliate of the foregoing.

### G.    Sources of Consideration for Plan Distributions

The Liquidating Trust shall make Distributions under the Plan from (a) the Liquidating Trust Assets; (b) the Prepetition A/R Reserve; and (c) the New Ark Funding.  The Liquidating

Trust Assets shall be used to pay the costs of administration of the Liquidating Trust (including the compensation of the Liquidating Trustee and any professionals retained by the Liquidating Trust), and to satisfy DIP Facility Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims as set forth in the Plan.  The GUC Trust shall make Distributions under the Plan with the Unsecured Claims Cash Amount.  The GUC Trust Assets shall be used to pay the costs of administration of the GUC Trust (including the compensation of the GUC Trustee and any professionals retained by the GUC Trust), and to satisfy Allowed General Unsecured Claims and Allowed Subordinated Seller Note Claims and, in the event Class 7 votes to reject the Plan, the Allowed Omega Unsecured Claim and the Allowed Service Provider Claims.  The New Ark Funding shall be used to fund the New Ark Reserve Account to reserve for Professional Fee Claims and other expenses set forth in the New Ark Budget.

Each Distribution referred to in Article III hereof shall be governed by the terms and conditions set forth in the Plan applicable to such Distribution and by the terms and conditions of the instruments or other documents evidencing or relating to such Distribution, and which terms and conditions shall bind each Person or Entity receiving such Distribution.

## H.    Revesting of Assets in Liquidating Debtors

The property of the Debtors' Estates shall be vested in the Liquidating Debtors on or following the Effective Date and continue to be subject to the jurisdiction of the Court following Confirmation of the Plan until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order; *provided*, *however*, that the GUC Trust Assets shall not be vested in the Liquidating Debtors on or following the Effective Date, but shall vest in the GUC Trust until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the GUC Trust Agreement, and the Confirmation Order.

## I.    Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

## J.    Applicability of Bankruptcy Code Sections 1145 and 1125(e)

Under Bankruptcy Code section 1145, the issuance of any securities under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee or GUC Trustee determines, with the advice of counsel, that the Liquidating Trust or GUC Trust, respectively, is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as

amended, in connection with the distribution of any securities, then the Liquidating Trustee or GUC Trustee, as applicable, shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## K.    Preservation of Causes of Action

In accordance with Bankruptcy Code section 1123(b), the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, the Retained Causes of Action and the Liquidating Trust's rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or the dissolution of the Liquidating Debtors.  The Liquidating Trust may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust beneficiaries; *provided*, *however*, that the Debtors retain the right to resolve and settle all such Retained Causes of Action prior to Confirmation of the Plan.  No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Liquidating Trust shall not pursue any and all available Retained Causes of Action against them.  Unless any Retained Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Liquidating Trust expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The substantive consolidation of the Debtors and their Estates pursuant to the Confirmation Order and Article V.A of the Plan shall not, and shall not be deemed to, prejudice any of the Retained Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Liquidating Debtors and the Liquidating Trust.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions on Allowed Claims

Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date or became Allowed Claims thereafter shall be made by the Disbursing Agent pursuant to the terms and conditions of the Plan, the Liquidating Trust Agreement, and the GUC Trust Agreement.  Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (a) has been satisfied after the Petition Date; (b) is listed in the Schedules as contingent, unliquidated, disputed, or in a zero amount, and for which a Proof of Claim has not been timely Filed; or (c) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim.

## B.    Disbursing Agent

The Disbursing Agent shall make all Distributions required under the Plan, subject to the terms and provisions of the Plan, the Liquidating Trust Agreement, and the GUC Trust Agreement.  If the Disbursing Agent is an independent third party designated to serve in such

capacity, such Disbursing Agent shall receive, without further Court approval, reasonable compensation from the Liquidating Trust and/or GUC Trust for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.  The Disbursing Agent shall be authorized and directed to rely upon the Debtors' Books and Records and the representatives and professionals of the Liquidating Trust and the GUC Trust in determining Allowed Claims not entitled to Distributions under the Plan in accordance with the terms and conditions of the Plan.

## C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1.    Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtors have been notified of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, after sufficient evidence of such addresses as may be requested by the Disbursing Agent is provided; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address; (d) at the addresses set forth in the other records of the Debtors or the Disbursing Agent at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

In making Distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the Claims register maintained by the Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Court disallowing Claims in whole or in part.

### 2.    Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address and such Holder provides sufficient evidence of such address as may be requested by the Disbursing Agent, at which time all missed Distributions shall be made to such Holder without interest, subject to the time limitations set forth below.  Amounts in respect of undeliverable Distributions made by the Disbursing Agent shall be returned to the Disbursing Agent until such Distributions are claimed.  The Disbursing Agent shall segregate and, with respect to Cash, deposit in a segregated account designated as an unclaimed Distribution reserve undeliverable and unclaimed Distributions for the benefit of all such similarly-situated Persons or Entities until such time as a Distribution becomes deliverable or is claimed, subject to the time limitations set forth below.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed Distribution within three months after the date such Distribution was returned undeliverable shall be deemed to have forfeited its Claim for such undeliverable or

unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors or the Liquidating Debtors, as applicable, the Debtors' Estates, the Liquidating Trustee, the Liquidating Trust, the GUC Trust, the GUC Trustee, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its or their property. Nothing contained in the Plan, the Liquidating Trust Agreement, or the GUC Trust Agreement shall require the Debtor, the Liquidating Trust, the Liquidating Trustee, the GUC Trust, the GUC Trustee, or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### D.    Means of Cash Payment

Cash payments made pursuant to the Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Disbursing Agent by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Disbursing Agent. In the case of foreign creditors, Cash payments may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction; *provided* that the Disbursing Agent receives a signed receipt or otherwise verifiable record of any such Cash payment.

### E.    Interest on Claims

Unless otherwise specifically provided for in the DIP Orders, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

### F.    Withholding and Reporting Requirements

In accordance with Bankruptcy Code section 346 and in connection with the Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority. The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder shall be subject to withholding and reporting requirements. As a condition of making any Distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-9 statements, to effect the necessary information reporting and withholding of applicable taxes with respect to Distributions to be made under the Plan as the Disbursing Agent may request. The Disbursing Agent shall be entitled in its sole discretion to withhold any Distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days. **The Distribution to any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent**

**shall be treated as an undeliverable or unclaimed Distribution pursuant to Article VI.C.2 of the Plan.**

Notwithstanding any other provision of the Plan, each Person and Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

**G.     Setoffs**

Subject to the terms and conditions of the Liquidating Trust Agreement and the GUC Trust Agreement, the Debtors, the GUC Trust, and/or the Liquidating Trust may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made under the Plan on account of the Claim, claims of any nature whatsoever that the Debtors may have against the Holder thereof, *provided that* any such right of setoff that is exercised shall be allocated, first, to the principal amount of the related Claim, and thereafter to any interest portion thereof, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the GUC Trust, and/or the Liquidating Trust of any such claim that the Debtors may have against such Holder.

**H.     Procedure for Treating and Resolving Disputed, Contingent, and/or Unliquidated Claims**

**1.     Objection Deadline; Prosecution of Objection**

Except as set forth in the Plan with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be Filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Court.  If an objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (a) was Scheduled by the Debtors but (b) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Court, the Claim to which the Proof of Claim or Scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been Allowed earlier.  Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Persons or Entities that have requested notice in the Chapter 11 Cases in accordance with Bankruptcy Rule 2002.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the GUC Trust (with respect to General Unsecured Claims) and the Liquidating Trust (for all other Claims) shall have the authority to: (a) File, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (c) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court; *provided*, *however*, that the objection to and settlement of Professional Fee Claims shall not be subject to this Article VI.H, but rather shall be governed by Article IX.A of the Plan.  In the event that any objection Filed by the Committee or the Debtors remains pending as of the Effective Date, the GUC Trustee (with respect to General Unsecured Claims) and the Liquidating Trustee (for all

other Claims) shall be deemed substituted for the Committee or the Debtor, respectively, as the objecting party.

Except as otherwise provided under the Plan, the Liquidating Trust shall be entitled to assert all of the Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counter-claims with respect to Claims.

### 2.     No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, the Liquidating Trust Agreement, or the GUC Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.  To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court or such other court having jurisdiction over the matter.

### 3.     Disputed Claims Reserve

On the Distribution Date and on each subsequent Periodic Distribution Date, the GUC Trust shall withhold on a Pro Rata basis from property that would otherwise be distributed to Holders of General Unsecured Claims entitled to Distributions under the Plan on such date, in a separate Disputed Claims Reserve, such amounts or property as may be necessary to equal 100% of Distributions to which Holders of such Disputed General Unsecured Claims would be entitled under the Plan if such Disputed General Unsecured Claims were allowed in their Disputed Claim Amount.  The GUC Trust may request, if necessary, estimation for any Disputed General Unsecured Claim that is contingent or unliquidated, or for which the GUC Trust determines to reserve less than the face amount.  If the GUC Trust elects not to request such an estimation from the Court with respect to a Disputed General Unsecured Claim that is contingent or unliquidated, the GUC Trust shall withhold the applicable Disputed Claims Reserve based upon the good faith estimate of the amount of such General Unsecured Claim by the GUC Trust.  If practicable, the GUC Trust shall invest any Cash that is withheld as the Disputed Claims Reserve in an appropriate manner to ensure the safety of the investment, in accordance with the GUC Trust Agreement.  Nothing in the Plan, the Disclosure Statement, or the GUC Trust Agreement shall be deemed to entitle the Holder of a Disputed General Unsecured Claim to postpetition interest on such Claim, however.

### 4.     Distributions After Allowance

Payments and Distributions to Holders of Disputed Claims that ultimately become Allowed Claims shall be made in accordance with provisions of the Liquidating Trust Agreement and GUC Trust Agreement that govern Distributions to Holders of Allowed Claims.

5.      **De Minimis Distributions**

The Liquidating Trust and GUC Trust shall not be required to make any distributions to Holders of Allowed Claims aggregating less than $50.00.  Liquidating Trust Assets and GUC Trust Assets that would be payable under the Plan to Holders of Claims but for this Article VI.H.5 shall remain Liquidating Trust Assets or GUC Trust Assets, as applicable, to be used in accordance with the Liquidating Trust Agreement or GUC Trust Agreement, as applicable.

6.      **Fractional Dollars**

Any other provision of the Plan notwithstanding, the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

7.      **Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

8.      **Distribution Record Date**

The Disbursing Agent shall have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date.  Instead, the Disbursing Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record Holders stated on the official Claims register or the Debtors' Books and Records, as applicable, as of the close of business on the Distribution Record Date.

**ARTICLE VII.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.      **Rejected Contracts and Leases**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which any Debtor is a party shall be deemed automatically rejected by the applicable Debtor as of the Effective Date, unless such contract or lease (a) previously has been assumed or rejected by the Debtors; (b) expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date; or (d) is identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be assumed; *provided*, *however*, that nothing contained in the Plan shall constitute an admission by any Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or its successors and assigns has any liability thereunder; and, *provided further*,

that the Debtors reserve their right, at any time before the Confirmation Date, to assume any Executory Contract or Unexpired Lease that was not already rejected prior to the Confirmation Date. The Confirmation Order shall constitute an order of the Court approving the rejections described in this Article VII.A, pursuant to Bankruptcy Code section 365, as of the Effective Date.

**B.      Rejection Damages Bar Date**

If the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII.A gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Trust, the GUC Trust or their respective successors or properties unless a Proof of Claim is filed with the Court and served on counsel for the Liquidating Trust or the GUC Trust, as applicable, by the Rejection Bar Date.

**C.      Indemnification Obligations**

Subject to the last sentence of this Article VII.C, any obligations of the Debtors pursuant to their organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person pursuant to the Debtors' organizational documents, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, *however*, that all monetary obligations under this Article VII.C shall be limited solely to available insurance coverage and neither the Liquidating Trust, the Liquidating Trustee, the GUC Trust, the GUC Trustee, nor any of their assets shall be liable for any such obligations. Any Claim based on the Debtors' obligations set forth in this Article VII.C shall not be a Disputed Claim or subject to any objection in either case by reason of Bankruptcy Code section 502(e)(1)(B). This provision for indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

**ARTICLE VIII.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THE PLAN**

**A.      Conditions to Confirmation**

The following are conditions precedent to Confirmation of the Plan, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan.

1.      The Confirmation Order shall have been entered by the Court.

2.      The Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect.

3.      The DIP Orders shall have been entered by the Court and shall not have been stayed, modified, or vacated on appeal.

4.      The Definitive Documents shall be in form and substance reasonably acceptable to the Debtors, the DIP Lender, New Ark, the Equity Sponsors, and the Service Providers.

5.      The Omega MOTA Order shall have been entered by the Court and shall not have been stayed, modified, or vacated on appeal; and the Operations Transfer Date for the Omega Facilities shall have occurred.

6.      The Blue Mountain MOTA Order shall have been entered by the Court and shall not have been stayed, modified, or vacated on appeal; and the Operations Transfer Date for the Blue Mountain Facilities shall have occurred.

## B.      Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan.

1.      The Confirmation Order shall have become a Final Order.

2.      The Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect.

3.      The Omega MOTA Order shall not have been stayed, modified, or vacated on appeal.

4.      The Blue Mountain MOTA Order shall not have been stayed, modified, or vacated on appeal.

5.      The "License Transfer Date" under both the Omega MOTA(s) and the Blue Mountain MOTA(s) shall have occurred.

6.      The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

7.      The Liquidating Trust Agreement shall have been executed and the Liquidating Trustee shall have been appointed.

8.      The GUC Trust Agreement shall have been executed and the GUC Trustee and GUC Trust Committee members shall have been appointed.

## C.      Waiver of Conditions

Each of the conditions to Confirmation set forth in Article VIII.A and each of the conditions to the Effective Date set forth in Article VIII.B of the Plan may be waived, with the

consent of the Omega Entities, in whole or in part by the Debtors without any other notice to parties-in-interest or the Court (other than with respect to the Omega Entities in connection with obtaining the Omega Entities' consent).  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Omega Entities or the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of any party to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted thereby at any time.

**D.      Consequences of Non-Occurrence of Effective Date**

If the Effective Date does not occur within 90 days following the Confirmation Date, or by such later date after notice and hearing, as is proposed by the Debtors, then upon motion by the Debtors and upon notice to such parties-in-interest as the Court may direct, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims shall be null and void without further order of the Court; and (c) the time within which the Debtors may assume and assign or reject all Executory Contracts shall be extended for a period of 30 days after such motion is granted.

**ARTICLE IX.**
**ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS**

**A.      Professional Fee Claims**

**1.      Final Fee Applications**

All final requests for payment of Professional Fee Claims (the "**Final Fee Applications**") must be Filed no later than the Professional Fee Bar Date.  Objections, if any, to Final Fee Applications of such Professionals must be Filed and served on the Liquidating Trust, the requesting Professional, and the U.S Trustee no later than 21 days from the date on which each such Final Fee Application is served and Filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.

The Professionals shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

**2.      Employment of Professionals after the Effective Date**

From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

**B.      Substantial Contribution Compensation and Expenses Bar Date**

Any Person or Entity that wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date must File an application with the Clerk of the Court, on or before the Administrative Claims Bar Date, and serve such application on the Liquidating Trust, the U.S. Trustee, and as otherwise required by the Court and the Bankruptcy Code, or be forever barred from seeking such compensation or expense reimbursement. Objections, if any, to the Substantial Contribution Claim must be Filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by order of the Court.

**C.      Other Administrative Claims**

All other requests for payment of an Administrative Claim arising after the Petition Date, other than Professional Fee Claims, must be Filed with the Court and served on the Liquidating Trust no later than the Administrative Claims Bar Date.  Unless the Liquidating Trust or any other party-in-interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that the Liquidating Trust or any other party-in-interest objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim.

**ARTICLE X.**
**EFFECTS OF CONFIRMATION**

**A.      Compromise and Settlement of Claims and Controversies**

Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any Distribution to be made on account of such Claim or Interest.  The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**B.      Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Liquidating Trust, the GUC Trust, and all other parties-in-interest in the Chapter 11 Cases.

C.      **Discharge of the Debtors**

Pursuant to Bankruptcy Code section 1141(d)(3), Confirmation shall not discharge Claims against the Debtors; *provided*, *however*, that no Holder of a Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, any Debtor or its respective successors, assigns, and/or property, except as expressly provided in the Plan.

D.      **Releases**

1.      **Releases by the Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, and any Person or Entity seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors, any Estate representative appointed or selected pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trust, or the GUC Trust, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive, and discharge each of the Released Parties for all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever in connection with or related to the Debtors, the Credit Agreement, the Omega Master Lease, the Omega MOTA(s), the Blue Mountain Non-HUD Master Lease, the Blue Mountain HUD Master Lease, the Blue Mountain MOTA(s), any contract between a Debtor and a Service Provider, the Restructuring Support Agreement, the DIP Credit Agreement, the Definitive Documents, the Chapter 11 Cases, or the Plan (other than the rights of the Debtors, the Liquidating Trustee, and the GUC Trustee to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date; *provided*, *however*, that nothing in this Article X.D.1 shall be a waiver of any defense, offset or objection to any Claim filed against the Debtors and their Estates by any Person or Entity.

2.      **Mutual Releases by Released Parties**

As of the Effective Date, to the maximum extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party shall be deemed to forever release, waive, and discharge each of the other Released Parties for all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever in connection with or related to the Debtors, the Credit Agreement, the Omega Master Lease, the Omega MOTA(s), the Blue Mountain Non-HUD Master Lease, the Blue Mountain HUD Master Lease, the Blue Mountain MOTA(s), any contract between a Debtor and a Service Provider, the Restructuring Support Agreement, the DIP Credit Agreement, the Definitive Documents, the Chapter 11 Cases, or the Plan (other than the rights of the Holders of Claims and Interests to enforce the Plan and the contracts, instruments,

releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the release described in this Article X.D.2, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in this Article X.D.2 is: (a) in exchange for good and valuable consideration provided by the Released Parties, a good-faith settlement and compromise of such Claims and Interests; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any claim, cause of action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARTICLE X.D.2 OF THE PLAN, NO PARTY SHALL BE RELEASED FROM ITS OBLIGATIONS UNDER THE OMEGA MOTA(S) THAT EXPRESSLY SURVIVE CONFIRMATION AND CONSUMMATION OF A CHAPTER 11 PLAN IN ACCORDANCE WITH THE TERMS OF THE OMEGA MOTA(S).

### 3.    Releases by Third-Party Releasing Parties

As of the Effective Date, to the maximum extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, each Third-Party Releasing Party shall be deemed to forever release, waive, and discharge each of the Released Parties from all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever in connection with or related to the Debtors, the Credit Agreement, the Omega Master Lease, the Omega MOTA(s), the Blue Mountain Non-HUD Master Lease, the Blue Mountain HUD Master Lease, the Blue Mountain MOTA(s), any contract between a Debtor and a Service Provider, the Restructuring Support Agreement, the DIP Credit Agreement, the Definitive Documents, the Chapter 11 Cases, or the Plan (other than the rights of the Holders of Claims and Interests to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the release described in this Article X.D.3, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in this Article X.D.3 is: (a) in exchange for good and valuable consideration provided by the Released Parties, a good-faith settlement and

compromise of such Claims and Interests; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any claim, cause of action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARTICLE X.D.3 OF THE PLAN, NO PARTY SHALL BE RELEASED FROM ITS OBLIGATIONS UNDER THE OMEGA MOTA(S) THAT EXPRESSLY SURVIVE CONFIRMATION AND CONSUMMATION OF A CHAPTER 11 PLAN IN ACCORDANCE WITH THE TERMS OF THE OMEGA MOTA(S).

## E.    Exculpation and Limitation of Liability

None of (a) the Debtors, (b) the managers, officers, or employees of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases, (c) the Professionals or Court-retained agents of the Debtors, (d) the Committee and its Professionals and, solely in their respective capacities as members or representatives of the Committee, each member of the Committee, or (e) the Patient Care Ombudsman and its Professionals shall have or incur any liability to any Holder of a Claim or an Interest, or any other party-in-interest, or any of their respective members, directors, managers, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders, or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the DIP Facility, the Omega MOTA(s), the Blue Mountain MOTA(s), the Restructuring Support Agreement, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction), and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  For the avoidance of doubt, nothing contained in this paragraph shall exculpate prepetition or post-Effective Date acts or omissions.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARTICLE X.E OF THE PLAN, NO PARTY SHALL BE RELEASED FROM ITS OBLIGATIONS UNDER THE OMEGA MOTA(S) THAT EXPRESSLY SURVIVE CONFIRMATION AND CONSUMMATION OF A CHAPTER 11 PLAN IN ACCORDANCE WITH THE TERMS OF THE OMEGA MOTA(S).

## F.    Injunction

Confirmation of the Plan shall have the effect of, among other things, permanently enjoining (a) all Persons and Entities that have held, hold, or may hold or have asserted, assert, or may assert Claims against or Interests in the Debtors with respect to any such Claim or Interest, and (b) respecting (vi)(A), (vi)(B), and (vi)(C) of this Article X.F, the Liquidating Debtors, the Liquidating Trust, and the GUC Trust, from and after the Effective Date, from

taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Liquidating Debtors, the Liquidating Trust, or the GUC Trust or any of its or their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Liquidating Debtors, the Liquidating Trust, or the GUC Trust or any of its or their property; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Liquidating Debtors, the Liquidating Trust, or the GUC Trust or any of its or their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Liquidating Debtors, the Liquidating Trust, the GUC Trust or any of its or their property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim, or Cause of Action released pursuant to the Plan, (B) any form of objection to any Claim that is Allowed by the Plan, or (C) Avoidance Actions against any Holder of a Claim that is Allowed by the Plan.  Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Article X.F shall prohibit the assertion against the Liquidating Trust, the Liquidating Trustee, the GUC Trust, and the GUC Trustee of all Claims or Interests, if any, related to the Debtors.

Confirmation of the Plan shall further have the effect of permanently enjoining all Persons and Entities from obtaining (a) any documents or other materials from current counsel for the Debtors that are in the possession of such counsel as a result of or arising in any way out of its representation of the Debtors, (b) any documents or other materials from current counsel for the Committee that are in the possession of such counsel as a result of or arising in any way out of its representation of the Committee, or (c) Books and Records, except in accordance with Article V.C of the Plan.

## G.    Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle (a) Claims against them and (b) claims that they have against other Persons or Entities.  The Debtors expressly reserve the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons and Entities at any time up to and including the Effective Date.

After the Effective Date, such right shall pass to the Liquidating Trust and the GUC Trust (solely for Claims by Holders of GUC Trust Interests) and shall be governed by the terms of Article VI.H of the Plan, the Liquidating Trust Agreement, and GUC Trust Agreement, as applicable.

H.      **Satisfaction of Subordination Rights**

Except as otherwise set forth in the Restructuring Support Agreement or herein, all Claims against the Debtors and all rights and claims between or among Holders of Claims relating in any manner whatsoever to Distributions on account of Claims against the Debtors based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the Distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date.  Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of Claims by reason of any subordination rights or otherwise, so that each Holder of Claims shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

A.      **Retention of Jurisdiction by the Court**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial Consummation of the Plan, and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the Plan, the Liquidating Trust Agreement, the Liquidating Trust, the GUC Trust Agreement, and the GUC Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.      To the extent not otherwise determined by the Plan, to determine (a) the allowance, classification, or priority of Claims upon objection by any party-in-interest entitled to file an objection, or (b) the validity, extent, priority, and nonavoidability of consensual and nonconsensual Liens and other encumbrances against assets of the Estates, the Liquidating Debtors, the Liquidating Trust, or the GUC Trust;

2.      To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person or Entity, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance, and Consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person or Entity;

3.      To protect the assets or property of the Estates, the Liquidating Debtors, the Liquidating Trust, and/or the GUC Trust, including Causes of Action, from claims against, or interference with, such assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens or other encumbrances on any assets of the Estates, the Liquidating Debtors, the Liquidating Trust, and/or the GUC Trust;

4.      To determine any and all applications for allowance of Professional Fee Claims;

47

5.      To determine any Priority Tax Claims, Other Priority Claims, or Administrative Claims, entitled to priority under Bankruptcy Code section 507(a);

6.      To resolve any dispute arising under or related to the implementation, execution, Consummation, or interpretation of the Plan and the making of Distributions hereunder;

7.      To determine any and all motions related to the rejection, assumption, or assignment of Executory Contracts or Unexpired Leases or determine any issues arising from the deemed rejection of Executory Contracts and Unexpired Leases set forth in Article VII of the Plan;

8.      To resolve any dispute related to the Omega MOTA(s) or the Blue Mountain MOTA(s);

9.      Except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

10.     To enter a Final Order closing each the Chapter 11 Cases;

11.     To modify the Plan under Bankruptcy Code section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

12.     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

13.     To determine any tax liability pursuant to Bankruptcy Code section 505;

14.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

15.     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the applicable bar date, the hearing to consider approval of the Disclosure Statement, or the Confirmation Hearing, or for any other purpose;

16.     To resolve any dispute or matter arising under or in connection with any order of the Court entered in the Chapter 11 Cases;

17.     To authorize, as may be necessary or appropriate, sales of assets as necessary or desirable and resolve objections, if any, to such sales;

18.     To resolve any disputes concerning, or to otherwise interpret, any release, injunction, exculpation, or other waiver or protection provided in the Plan, including the releases set forth in Article X.D of the Plan;

19.     To approve, if necessary, any Distributions, or objections thereto, under the Plan;

20. To approve, as may be necessary or appropriate, any Claims settlement entered into or setoff exercised by the Liquidating Trust or the GUC Trust;

21. To resolve any dispute or matter arising under or in connection with the Liquidating Trust or the GUC Trust;

22. To order the production of documents, disclosures or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004; and

23. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

**B.      Retention of Non-Exclusive Jurisdiction by the Court**

Notwithstanding anything else in the Plan, the Court shall retain non-exclusive jurisdiction over all Retained Causes of Action prosecuted by the Liquidating Trust.

**C.      Failure of Court to Exercise Jurisdiction**

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article XI.A of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**A.      Modifications and Amendments**

The Debtors may, with the consent of the Omega Entities, alter, amend, or modify the Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) and/or Bankruptcy Rule 3019 at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Debtors may, with the consent of the Omega Entities, under Bankruptcy Code section 1127(b), institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; *provided*, *however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

**B.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, then the Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to

be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person or Entity.

## D.    Payment of Statutory Fees

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or as soon as practicable after the Effective Date by the Liquidating Trust.

After the Effective Date, quarterly fees shall continue to accrue and be timely paid until the Liquidating Debtors' cases are closed, dismissed, or converted. Subject to the following paragraph, such fees shall be allocated between the parties as follows: the Liquidating Trust shall fund the quarterly fees payable on account of the Liquidating Trust's and the Liquidating Debtors' disbursements, and the GUC Trust shall fund any additional incremental fees payable on account of the GUC Trust's disbursements; the GUC Trust shall timely transfer its portion of the quarterly fees to the Liquidating Trust when such fees become due. In addition, and subject to the following paragraph, the Liquidating Trust and Liquidating Debtors shall File post-confirmation quarterly reports or any pre-confirmation monthly operating reports not Filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to File a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtors and their Estates.

If the GUC Trust requests in writing that the Liquidating Debtors delay in the Filing of a motion to close the Chapter 11 Cases, the GUC Trust shall fund any additional quarterly fees and the costs incurred by the Liquidating Debtors for the preparation and filing of any additional post-confirmation quarterly reports required solely as a consequence of the delayed closure of the Chapter 11 Cases; the GUC Trust shall timely transfer such amounts to the Liquidating Trust when such quarterly fees become due.

Notwithstanding the foregoing, the Liquidating Debtors shall remain responsible for the payment of U.S. Trustee fees subject to 28 U.S.C. § 1930 until the earlier of the time the Chapter 11 Cases are closed, dismissed, or converted.

## E.    Revocation, Withdrawal, or Non-Consummation

Subject to the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date and to File subsequent plans. If the Debtors revoke or withdraw the Plan as to any or all of the Debtors, or if

Confirmation or Consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person or Entity; (ii) prejudice in any manner the rights of such Debtors or any other Person or Entity; or (iii) constitute an admission of any sort by such Debtors or any other Person or Entity.

**F.    Service of Documents**

Any notice, request or demand required or permitted to be made or provided to or upon a Debtor or Liquidating Debtor, the Liquidating Trust, or the GUC Trust shall be (a) in writing; (b) served by (i) certified mail, return receipt requested; (ii) hand delivery; (iii) overnight delivery service; (iv) first class mail; or (v) facsimile transmission; (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed; and (d) addressed as follows:

***The Debtors and Liquidating Debtors***

Gulf Coast Health Care, LLC
c/o Ankura Consulting Group, LLC
485 Lexington Avenue, 10th Floor
New York, NY 10017
Attn: M. Benjamin Jones (ben.jones@ankura.com)

with copies to:

McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Attn: Daniel M. Simon (dmsimon@mwe.com) and Emily C. Keil (ekeil@mwe.com)

and

McDermott Will & Emery
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Attn: David R. Hurst (dhurst@mwe.com)

***The DIP Agent or Omega Entities***

Omega Healthcare Investors, Inc.
303 International Circle, Suite 200
Hunt Valley, MD 21030

Attn: Daniel J. Booth (dbooth@omegahealthcare.com)

with a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Gary Holtzer (gary.holtzer@weil.com), Robert Lemons (robert.lemons@weil.com), and
Jason Hufendick (jason.hufendick@weil.com)


***The Liquidating Trust***

[TO COME]


***The GUC Trust***

[TO COME]


**G.      Plan Supplement(s)**

Exhibits to the Plan not attached hereto shall be Filed in one or more Plan Supplements by the Plan Supplement Filing Date.  Any Plan Supplement (and amendments thereto) Filed by the Debtors shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their Filing, the Plan Supplements may be viewed at the Debtors' case website (https://dm.epiq11.com/ GulfCoastHealthCare) or the Court's website (http://www.deb.uscourts.gov).  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, the Plan Supplement shall control.  The documents considered in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

Dated:  Wilmington, Delaware
        October 28, 2021

GULF COAST HEALTH CARE, LLC, *et al.*,
Debtors and Debtors-in-Possession

By:    *DRAFT*
       M. Benjamin Jones
       Chief Restructuring Officer

MCDERMOTT WILL & EMERY LLP

By:    *DRAFT*
       David R. Hurst (I.D. No. 3743)
       1007 North Orange Street, 10th Floor
       Wilmington, DE 19801
       Telephone: (302) 485-3900

       -and-

       Daniel M. Simon (admitted *pro hac  vice*)
       Emily C. Keil (admitted *pro hac vice*)
       444 West Lake Street, Suite 4000
       Chicago, IL 60606
       Telephone: (312) 372-2000

*Proposed Counsel for the Debtors and
Debtors-in-Possession*